**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No. 1:21-cr-00238 (TFH)** |
| **v.** | : | |
| | : | |
| **JOSHUA KAHLE BUSTLE,** | : | |
| | : | |
| **Defendant.** | : | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the Acting United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Joshua Bustle to one month of home confinement, a probationary term of three years, 40 hours of community service, and $500 in restitution.

### I.    Introduction

The defendant, Joshua Bustle, and his codefendant, Jessica Bustle, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of the certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred law enforcement officers, and resulted in more than a million dollars' worth of property damage. The government recognizes that Joshua Bustle did not personally engage in or espouse violence or property destruction and accepted responsibility early. The defendant stands before this Court to be sentenced on a misdemeanor conviction, but his conduct on January 6, like the conduct of scores of other defendants, took place in the context of a large and violent riot that relied on numbers to overwhelm law enforcement, breach the Capitol, and disrupt the proceedings. But for his actions alongside so many others, the riot likely would have failed.

1

## II.     Factual and Procedural Background

*The January 6, 2021 Attack on the Capitol*

To avoid exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* ECF No. 25, at 1-3. As this Court knows, a riot cannot occur without rioters, and each rioter's actions – from the most mundane to the most violent – contributed, directly and indirectly, to the violence and destruction of that day. With that backdrop we turn to the defendant's conduct and behavior on January 6.

*Joshua Bustle's Role in the January 6, 2021 Attack on the Capitol*

On January 6, 2021, Joshua Bustle and Jessica Bustle drove to Washington, D.C., from their home in Bristow, Virginia. They entered the Capitol together at approximately 2:50 p.m., through a second-floor door near the rotunda, and remained inside for about 20 minutes. That door had been breached by other rioters about 30 minutes before they entered. They walked directly into the rotunda, arriving at around the same time as a contingent of police, and eventually left, as police officers cleared the rotunda, through the same door where they entered.

Joshua Bustle has admitted that he knew he did not have permission to enter the Capitol building and that he acted with the intent to parade, demonstrate, and picket within the building. In part, he sought to parade, demonstrate, and picket against the certification of the electoral vote. *See* Statement of Offense ¶¶ 10-13; PSR (Joshua Bustle) at ¶¶ 19-22.

*The Charges and Plea Agreement*

On March 4, 2021, Joshua Bustle was charged by complaint with violating 18 U.S.C. §§ 1752(a)(1) and (2), and 40 U.S.C. §§ 5104(e)(2)(D) and (G). On March 8, 2021, he was arrested at his home in Bristow, Virginia. On March 22, 2021, Joshua Bustle was charged by Information with the same crimes. On June 14, 2021, he pleaded guilty to Count Four of the Information, which

charged a violation of 40 U.S.C. § 5104(e)(2)(G). In his plea agreement, Joshua Bustle agreed to pay $500 in restitution to the Department of the Treasury.

### III.    Statutory Penalties

The defendant now faces a sentencing on a single count of 40 U.S.C. § 5104(e)(2)(G). As noted by the plea agreement and the U.S. Probation Office, the defendant faces up to six months of imprisonment and a fine of up to $5,000. As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply to it. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

### IV.    Sentencing Factors Under 18 U.S.C. § 3553(a)

In this case, sentencing is guided by 18 U.S.C. § 3553(a). Some of the factors this Court must consider include: the nature and circumstances of the offense, § 3553(a)(1); the history and characteristics of the defendant, *id.*; the need for the sentence to reflect the seriousness of the offense and promote respect for the law, § 3553(a)(2)(A); the need for the sentence to afford adequate deterrence, § 3553(a)(2)(B); and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. § 3553(a)(6). We therefore turn to these factors.

### A.  The Nature and Circumstances of the Offense

The attack on the U.S. Capitol, on January 6, 2021 is a criminal offense unparalleled in American history. It represented a grave threat to our democratic norms; indeed, it was the one of the only times in our history when the building was literally occupied by hostile participants. By its very nature, the attack defies comparison to other events. So, too, does the conviction this defendant now faces. Picketing, demonstrating, or parading at the Capitol as part of the riot on January 6 is not like picketing at the Capitol some other day, without other rioters present.

While each defendant should be sentenced based on their individual conduct, as we now discuss, this Court should note that each individual person who entered the Capitol on January 6 did so under the most extreme of circumstances. As a person entered the Capitol, they would—at a minimum—have crossed through numerous barriers and barricades and heard the throes of a mob. Depending on the timing and location of their approach, they also may have observed extensive fighting with law enforcement and likely would have smelled chemical irritants in the air. Make no mistake, no rioter was a mere tourist that day.

Additionally, while looking at the defendant's individual conduct, we must assess such conduct on a spectrum. This Court, in determining a fair and just sentence on this spectrum, should look to a number of critical facts, to include: (1) whether, when, how the defendant entered the Capitol building; (2) whether the defendant engaged in any violence or incited violence; (3) whether the defendant engaged in any acts of destruction; (4) the defendant's reaction to acts of violence or destruction; (5) whether during or after the riot, the defendant destroyed evidence; (6) the length of the defendant's time inside of the building, and exactly where the defendant traveled; (7) the defendant's statements in person or on social media; (8) whether the defendant cooperated with, or ignored, law enforcement; and (9) whether the defendant otherwise exhibited evidence of remorse or contrition. While these factors are not exhaustive nor dispositive, they help to place each individual defendant on a spectrum as to their fair and just punishment.

Shortly after 2:50 p.m., Joshua Bustle entered the Capitol through a door on the east side of the Capitol Building's second floor, near the rotunda. He entered immediately behind Jessica Bustle and followed closely behind her, appearing to film her with his cell phone. After entering, Joshua Bustle immediately walked toward the rotunda. He happened to enter the rotunda around the same time as a detachment of Metropolitan Police Department officers arrived and began to

corral the rioters. Shortly thereafter, the Metropolitan Police Department officers and a group of U.S. Capitol Police officers began to tighten their lines, making the crowd of rioters more compact and eventually forcing them from the rotunda. Joshua Bustle was among this crowd. After leaving the rotunda, Joshua Bustle left the Capitol through the same doors where he had entered. Again, he followed immediately behind Jessica Bustle.

The government has no evidence that Joshua Bustle engaged in any violence or destruction of property; nor that he destroyed evidence after the riot; nor that he wrote anything with respect to the riot on social media. He entered the building approximately thirty minutes after other rioters first breached that door. By the time he entered, the doors were wide open, and police officers stood on either side of the door as a group of rioters crowded the opening. And yet, there were clear signs of damage. The doors through which he entered had their windows smashed in. He would have heard an alarm sounding throughout the Capitol rotunda and its antechamber: a loud, high-pitched, continuous beeping, similar to a smoke alarm.

While the nature and circumstances of the offense supports a sentence of incarceration, for misdemeanor defendants who, like Joshua Bustle, committed fewer of the non-exclusive factors listed above, the government is more likely to recommend a more lenient sentence.

### B.  The History and Characteristics of the Defendant

As set forth in the PSR, Joshua Bustle's criminal history is limited to several traffic infractions, with the disposition unclear as to some of these matters. (Dkt. 28 ¶¶ 29-35.) If the Sentencing Guidelines did apply to his offense of conviction, he would have no criminal history points. USSG § 4A1.2(c)(2). Accordingly, he would be in Criminal History Category I. USSG §§ 4A1.1, 5A. Joshua Bustle holds stable employment. This factor supports a more lenient sentence.

The government also notes that from the outset, through his attorney, Joshua Bustle expressed a desire to plead guilty, acknowledge his conduct, and promptly resolve his case. When recommending an appropriate sentence, the government gives significant weight to the defendant's early resolution of this case.

### C.  The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds, and all that it involved, was an attack on the rule of law. "The violence and destruction of property at the U.S. Capitol on January 6 showed a blatant and appalling disregard for our institutions of government and the orderly administration of the democratic process."[1] As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases arising out of the riot on January 6, 2021, including in misdemeanor cases.

### D.  The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010). Here, the government expects that the goal of specific deterrence is obtained for the defendant by the prosecution and conviction itself. The personal and reputational consequences the defendant has suffered appear to be sufficient to discourage him from engaging in similar conduct.

---

[1] Federal Bureau of Investigation Director Christopher Wray, Statement before the House Oversight and Reform Committee (June 15, 2021) (hereinafter "FBI Director Wray's Statement"), available at https://oversight.house.gov/sites/democrats.oversight.house.gov/files/Wray%20 Testimony.pdf

The demands of general deterrence, on the other hand, weigh in favor of incarceration, as they will for nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. For the violence at the Capitol on January 6 was cultivated to interfere, and did interfere, with one of the most important democratic processes we have: the transfer of power. As noted by Judge Moss during sentencing, in *United States v. Paul Hodgkins*, 21-cr-188-RDM:

> [D]emocracy requires the cooperation of the governed. When a mob is prepared to attack the Capitol to prevent our elected officials from both parties from performing their constitutional and statutory duty, democracy is in trouble. The damage that [the defendant] and others caused that day goes way beyond the several-hour delay in the certification. It is a damage that will persist in this country for decades.

Tr. at 69-70. Indeed, the attack on the Capitol means "that it will be harder today than it was seven months ago for the United States and our diplomats to convince other nations to pursue democracy. It means that it will be harder for all of us to convince our children and our grandchildren that democracy stands as the immutable foundation of this nation." *Id.* at 70.

The gravity of these offenses demand deterrence. This was not a protest. *See id.* at 46 ("I don't think that any plausible argument can be made defending what happened in the Capitol on January 6th as the exercise of First Amendment rights."). And it is important to convey to future rioters and would-be mob participants—especially those who intend to improperly influence the democratic process—that their actions will have consequences. There is possibly no greater factor that this Court must consider.

In short, the question of deterrence, here, is multi-faceted. The demands of general deterrence favor incarceration, but the need for specific deterrence may be met with a less severe sentence.

### E.  The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, to assault on law enforcement officers, to conspiracy to corruptly interfere with Congress. Each offender must be sentenced based on their individual circumstances, but with the backdrop of January 6 in mind. Moreover, each offender's case will exist on a spectrum that ranges from conduct meriting a probationary sentence to crimes necessitating years of imprisonment. The misdemeanor defendants will generally fall on the lesser end of that spectrum, but misdemeanor breaches of the Capitol on January 6, 2021 were not minor crimes. A probationary sentence should not necessarily become the default. Indeed, the government invites the Court to join Judge Lamberth's admonition that "I don't want to create the impression that probation is the automatic outcome here because it's not going to be." *United States v. Anna Morgan-Lloyd*, 1:21-cr-00164 (RCL), Tr. 6/23/2021 at 19. At this time, no unwarranted sentencing disparities exist, nor does the government's request create one.

### V.    Conclusion

Sentencing here requires that the Court carefully balance the various factors set forth in 18 U.S.C. § 3553(a). As detailed above, some of those factors support a sentence of incarceration and some support a more lenient sentence. Balancing these factors, the government recommends that this Court sentence Joshua Bustle to one month of home confinement, three years of probation, 40 hours of community service, and $500 in restitution. Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on Joshua Bustle's liberty as a consequence of his behavior, while recognizing his early acceptance of responsibility. Additionally, such a sentence recognizes that some but not all the factors enumerated in Section

IV.A., above, apply his case. It also allows continued monitoring of Joshua Bustle in the event of future participation in similar conduct.

Respectfully submitted,

CHANNING D. PHILLIPS
ACTING UNITED STATES ATTORNEY

By:     */s/ Michael J. Romano*
MICHAEL J. ROMANO
Trial Attorney, Detailee
IL Bar No. 6293658
555 4th Street, N.W.
Washington, D.C. 20530
202-307-6691
michael.romano@usdoj.gov